```
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Robin Buxton,
     Claimant

     v.                                Civil No. 08-cv-20-SM
                                       Opinion No. 2008 DNH 171

Michael J. Astrue, Commissioner,
Social Security Administration,
     Defendant
```

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), claimant, Robin Buxton, moves to reverse the Commissioner's decision denying her application for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423 (the "Act"). The Commissioner objects and moves for an order affirming his decision. For the reasons given below, this matter is remanded to the Administrative Law Judge ("ALJ") for further proceedings consistent with this opinion.

**Factual Background**

I.  Procedural History.

On February 16, 2006, claimant filed an application for Disability Insurance Benefits and Supplemental Security Income benefits under Titles II and XVI of the Act, alleging that she

had been unable to work since December 31, 1998 due to symptoms of post-traumatic stress disorder. She was awarded Supplemental Security Income Benefits, with an established onset date of disability of January 1, 2005. Nevertheless, her application for Disability Insurance Benefits was denied on grounds that she was <u>not</u> disabled just three months earlier, as of her date last insured (i.e., September 30, 2004). She then requested, and was granted, a hearing before an ALJ.

On April 26, 2007, claimant and her attorney appeared before an ALJ, who considered claimant's application for Disability Insurance Benefits de novo. At that hearing, claimant amended her alleged disability onset date to November of 2000. Administrative Record ("Admin. Rec.") at 210-11.[1] Subsequently, the ALJ issued a written decision in which he concluded that, as of her date last insured, claimant retained the residual functional capacity to perform the physical and mental demands of a significant number of jobs existing in the national economy. Accordingly, he concluded that claimant was not disabled, as that

---

[1] Although it is a minor error, the ALJ's written decision incorrectly states that claimant's amended onset date was January 1, 2000. <u>See</u> Admin. Rec. at 13.

term is defined in the Act, prior to the date on which her insured status expired.

Claimant sought review of the ALJ's decision by the Appeals Council, which denied her request. As a result, the ALJ's denial of claimant's application for benefits became the final decision of the Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that she is disabled within the meaning of the Act. She then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 6). In response, the Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 10). Those motions are pending.

II.  Stipulated Facts.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 11), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  Properly Supported Findings by the ALJ are
    Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence.[2] See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position. See Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by

---

[2]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

substantial evidence."). See also <u>Rodriguez v. Secretary of Health & Human Services</u>, 647 F.2d 218, 222-23 (1st Cir. 1981).

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See <u>Burgos Lopez v. Secretary of Health & Human Services</u>, 747 F.2d 37, 40 (1st Cir. 1984) (citing <u>Sitar v. Schweiker</u>, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." <u>Irlanda Ortiz</u>, 955 F.2d at 769 (citation omitted). Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. See <u>Frustaglia v. Secretary of Health & Human Services</u>, 829 F.2d 192, 195 (1st Cir. 1987) (citing <u>Da Rosa v. Secretary of Health & Human Services</u>, 803 F.2d 24, 26 (1st Cir. 1986)).

II. <u>The Parties' Respective Burdens</u>.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove that her impairments prevent her from performing her former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, the claimant is not required to establish a doubt-free claim.  Her initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

If the claimant has shown an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. § 1512(g).  If the Commissioner shows the existence of other jobs that the claimant can perform, then the overall burden to demonstrate disability remains with the claimant.  See Hernandez v.

Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6. When determining whether a claimant is disabled, the ALJ is also required to make the following five inquiries:

   (1)  whether the claimant is engaged in substantial
        gainful activity;

   (2)  whether the claimant has a severe impairment;

   (3)  whether the impairment meets or equals a listed
        impairment;

   (4)  whether the impairment prevents the claimant from
        performing past relevant work; and

   (5)  whether the impairment prevents the claimant from
        doing any other work.

20 C.F.R. § 404.1520. Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of
> such severity that [she] is not only unable to do [her]
> previous work but cannot, considering [her] age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which [she] lives, or
> whether a specific job vacancy exists for [her], or
> whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

## Discussion

I.  <u>Background - The ALJ's Findings</u>.

In concluding that Ms. Buxton was not disabled within the meaning of the Act, the ALJ first determined that she had not been engaged in substantial gainful employment since January 1, 2000. Next, he concluded that claimant suffers from borderline personality disorder and post-traumatic stress disorder ("PTSD"), both of which were deemed to be severe. Admin. Rec. at 15. Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

The ALJ then determined that claimant retained the residual functional capacity ("RFC") to perform a full range of exertional work, concluding that she "has no physical limitations and can do unskilled jobs not requiring complex, detailed instructions/ tasks."  Admin. Rec. at 18.  He noted, however, that claimant's RFC was "minimally compromised by nonexertional limitations," concluding that she "has moderate limitations in some areas of functioning which are affected by her impairments: specifically in social functioning and maintaining concentration, persistence, and pace."  Id.  In light of those findings, and applying the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, Appendix 2, tables 1-3 (the "Grid"), as a guide, he concluded that claimant's symptoms were "not severe enough to significantly erode the number of jobs in the national economy which she can perform."  Admin. Rec. at 21.  Accordingly, he found that claimant was not disabled at any time through her date last insured.

II.  Claimant's Assertions of Error.

Claimant advances several arguments in an effort to undermine the ALJ's conclusion that she was not, as of her date last insured, disabled. For the most part, those arguments lack merit. She does, however, identify one problem with the ALJ's analysis. Although she does not develop the argument in any detail, claimant suggests that the ALJ erred by relying exclusively on the Grid, without the benefit of testimony from a vocational expert. The Court of Appeals for the First Circuit has said the following about the nature and proper use of the Grid:

> "The Grid," as it is known, consists of a matrix of the applicant's exertional capacity, age, education, and work experience. If the facts of the applicant's situation fit within the Grid's categories, the Grid directs a conclusion as to whether the individual is or is not disabled. However, if the applicant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust) that restrict his ability to perform jobs he would otherwise be capable of performing, then the Grid is only a framework to guide the decision.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citations omitted).

The purpose of the Grid is to streamline the process by which the Commissioner may satisfy his burden of proving, at step five of the sequential analysis, that jobs exist in the national economy that the claimant can perform.  See Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524 (1st Cir. 1989).  In short, it allows the Commissioner to meet that burden without hearing testimony from a vocational expert.  But, because the Grid "is meant to reflect the potential occupational base remaining to a claimant in light of his strength limitations," id., when a claimant suffers from "nonexertional impairments in addition to exertional limits, the Grid may not accurately reflect the availability of jobs such a claimant could perform." Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991)(emphasis added).

Nevertheless, the First Circuit has held that an ALJ may rely exclusively on the Grid to establish the existence of occupations in which the claimant can engage provided the claimant's nonexertional limitations do not impose more than a marginal limitation on the range of work the claimant otherwise has the exertional capacity to perform.  See Ortiz, 890 F.2d at 524.  But, "[i]f the occupational base is significantly limited by a nonexertional impairment, the [Commissioner] may not rely on

11

the Grid to carry the burden of proving that there are other jobs a claimant can do.  Usually, testimony of a vocational expert is required."  Heggarty, 947 F.2d at 996 (citation omitted).

In this case, given the nature and severity of claimant's mental impairments, the ALJ erred by relying exclusively upon the Grid (even as a "framework" for his decision), rather than obtaining the testimony of a vocational expert.  The court of appeals addressed this point at length in Ortiz, noting that the "shorthand approach" of using the Grid as a framework to guide a disability determination is only appropriate under certain circumstances:

> We think such a shorthand approach is permissible, so long as the factual predicate (that claimant's [mental impairment] does not interfere more than marginally with the performance of the full range of unskilled work) is amply supportable. . . .  [S]o long as a nonexertional impairment is justifiably found to be substantially consistent with the performance of the full range of unskilled work, the Grid retains its relevance and the need for vocational testimony is obviated.
>
> In the case of mental impairments, this inquiry actually entails two separate determinations: (1) whether a claimant can perform close to the full range of unskilled work, and (2) whether he can conform to the demands of a work setting, regardless of the skill level involved.  As to the former, the Secretary has outlined the mental capabilities required for unskilled work as follows:

12

> The basic mental demands of competitive remunerative unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. <u>A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base</u>.

<u>Ortiz</u>, 890 F.2d at 526 (quoting SSR 85-15, Titles II and XVI: Capability to do Other Work - The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857 (Nov. 1984)) (emphasis supplied).

Here, the record strongly suggests that claimant's mental impairments have substantially diminished her ability to "understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." <u>Id</u>. (quoting SSR 85-15).  <u>See, e.g.</u>, Admin. Rec. at 161 (in section III of claimant's functional capacity assessment, the examiner concludes that Ms. Buxton is "not able to maintain attention and concentration for extended periods of time.  She is not able to perform activities within a schedule and maintain regular attendance.  She is not able to complete a normal workday and workweek without interruptions from psychologically based

symptoms and perform at a consistent pace. . . . She is not able to work in coordination or get along with others without being distracted or distracting them. . . . She is not able to accept instructions and respond appropriately to criticism from supervisors."). If those conclusions (and other, similar, conclusions in the record) are credited as true, the ALJ's reliance on the Grid was in error. Instead, the ALJ should have consulted a vocational expert to determine whether, in light of claimant's nonexertional limitations, she was still capable of performing substantial gainful activity at the non-skilled level.

Finally, the court cautions that if a question arises as to <u>when</u> claimant's impairments became so severe as to render her disabled, the ALJ should consult a medical expert. The court addressed that issue at length in a recent opinion. <u>See</u> <u>Moriarty v. Commissioner</u>, 07-cv-342-SM, 2008 DNH 158 (D.N.H. Aug. 28, 2008). <u>See also</u> Social Security Ruling 83-20, Titles I and XVI: Onset of Disability, 1983 WL 31249 (1983).

## Conclusion

This is, to be sure, a close case. While there is certainly evidence in the record supportive of claimant's assertion that she was disabled prior to her date last insured, there is also

evidence supportive of the conclusion that she was not. Among other things, the ALJ appears to have correctly concluded that claimant's impairments do not meet the severity requirements of any listed impairments because she is not (or was not) "markedly limited" in two of the four relevant areas of functioning. Additionally, there is evidence of claimant's lack of consistent treatment, both in terms of attending therapy sessions and taking prescribed medications. A claimant's failure to follow a prescribed treatment regimen, combined with a failure to faithfully take prescribed medications (particularly when, as here, the claimant reports decreased symptoms when faithfully following the prescribed regimen), certainly undermines her claims of disabling symptoms. See 20 C.F.R. § 404.1530. See also Social Security Ruling ("SSR") 82-59, Titles II and XVI: Failure to Follow Prescribed Treatment, 1982 WL 31384 (1982).[3]

---

[3] The record suggests that claimant's failure to take medications as prescribed was a knowing and voluntary decision. See, e.g., Admin. Rec. at 93 ("She was on Zoloft 100 mg qd in past, and did very well. She d/c [discontinued] in 9/01 because she felt she no longer needed it."). Claimant has not pointed to any opinions from either examining or non-examining medical sources that suggest her failure/inability to take prescribed medications as instructed was the product of her mental impairments.

Nevertheless, in light of the fact that the Commissioner determined that claimant was disabled (at least for purposes of SSI benefits) as of January 1, 2005, he bears a relatively heavy burden (given the substantial medical record in this case and claimant's well-documented and lengthy history of mental health disorders) to show that she was <u>not</u> disabled only three months earlier, when her insured status expired. And, given the quantity of evidence suggesting that claimant's nonexertional (i.e., mental) impairments are precisely the type which severely limit the occupational base of even non-skilled work, <u>see</u> <u>Ortiz</u>, 890 F.2d at 526, the court is persuaded that the ALJ should not have relied exclusively on the Grid. Instead, he should have consulted a vocational expert.

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 6) is granted to the extent she seeks a remand to the ALJ for further proceedings. The Commissioner's motion to affirm his decision (document no. 10) is denied. Claimant's motion to supplement the administrative transcript (document no. 8) is denied as moot.

Pursuant to Sentence Four of 42 U.S.C. § 405(g), this matter is hereby remanded to the ALJ for further proceedings consistent

with this order.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

                                                       _____
                                                       Steven J. McAuliffe
                                                       United States District Judge

September 16, 2008

cc:   Elizabeth R. Jones
       T. David Plourde, Esq.